1   ROBERT KANE (CSB No. 71407)
    LAW OFFICES OF ROBERT KANE
2   870 Market Street
    San Francisco California. 94102
3   Tel: (415) 982-1510; Fax: (415) 982-5821

4

5   SHIRLEY HOCHHAUSEN (CSB No. 145619)
    BAYVIEW HUNTERS POINT COMMUNITY LEGAL
6   4622 3rd St.
    San Francisco, CA 94124
7   Tel: (415) 735-4124; Fax: (415) 534-3469

8   Attorneys for Plaintiff
    WILLIE YORK

9

10

11

12

13                  UNITED STATES DISTRICT COURT

14      NORTHERN DISTRICT OF CALIFORNIA, NORTHERN DIVISION

15   WILLIE YORK,                          Case No.

16             Plaintiff,                  **PLAINTIFF'S MEMORANDUM
                                           OF POINTS AND AUTHORITIES
17        v.                               IN SUPPORT OF** *EX PARTE*
                                           **MOTION FOR TEMPORARY
18   BANK OF AMERICA, CHAMPION MORTGAGE,   RESTRAINING ORDER AND
     and DOES 1 -50, inclusive,            ORDER TO SHOW CAUSE
19                                          REGARDING PRELIMINARY
              Defendants.                   INJUNCTION**

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

INTRODUCTION.................................................................................1

3

STATEMENT OF FACTS....................................................................2

4

ARGUMENT.......................................................................................5

5

Plaintiffs Seeks And Is Entitled To A Temporary Restraining Order And
Preliminary Injunction To Stop The Foreclosure Of Their Home.....................4

6

7

    A. The Legal Standard.............................................................5

8

    B. Plaintiffs Are Likely To Succeed In Proving Their Claims.....................5

9

    C. The Threatened Foreclosure of Plaintiffs Home Constitutes
       Irreparable Harm..............................................................8

10

    D. The Balance of Hardships Favors Plaintiffs....................................9

11

    E. Public Interest Favors Granting Injunctive Relief to
       Prevent Foreclosure...........................................................9

12

CONCLUSION.....................................................................................9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages**

*Alliance for the Wild Rockies v. Cottrell,*
   632 F.3d 1127, 1131 (9th Cir. 2011)...................................................5

*Castillo v. Skoba,*
   2010 U.S. Dist. LEXIS 108432.................................................8, 9

*Erickson v. Bohne,*
   130 Cal.App.2d 553 (1955).......................................................6

*Gilder v. PGA Tour, Inc.,*
   936 F.2d 417 (9th Cir. 1991)...................................................5

*Hauck v. JP Morgan Chase Bank USA.,*
   552 F.3d 1114, 1122 (9th Cir. 2009)........................................8

*Jackmon v. America's Servicing Company,*
   2011 U.S. Dist. LEXIS 93696..................................................9

*Lapper v. Suntrust Mortg.,*
   N.A., 2013 WL 2929377 (C.D. Cal. June 7, 2013) .....................8

*Morris v. Redwood Empire Bancorp,*
   128 Cal.App.4th 1305, 1313 (2005).........................................8

*Quaccha v. DaimlerChrysler Corp.,*
   122 Cal.App.4th 1442.............................................................8

*Schiavon v. Arnaudo Brothers*
   84 Cal.App.4th 374, 378 (2000)..............................................6

*Senigar v. Bank of America.,*
   (Cal. Super. Ct. Feb. 20, 2013)...............................................8

*Smith v. State Farm Mut. Auto. Ins. Co.,*
   93 Cal.App.4th 700, 718 (2001)..............................................8

*Sundance Land Corp. v. Community First Federal Savings and Loan Association,*
   840 F.2d 653 (9th Cir. 1988)...................................................8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.,*
   240 F.3d 832, 839 n. 7 (9th Cir. 2001).....................................5

*Underwood v. American Home Mortgage Co.,*
   66 B.R. 656 (Bankr. W.D. Va. 1986)........................................8

*U.S. Philips Corp. v. KBC Bank N.V.,*
   590 F.3d 1091, 1094 (9th Cir. 2010).......................................5

*Wadhwa v. Aurora Loan Services, LLC,*
   2011 U.S. Dist. LEXIS 73949...............................................8,9

*Washington v. Indiana High School Athletics Ass'n, Inc.*,
    181 F.3d 840 (7th Cir. 1999)............................................................5, 6

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7, 20 (2008)...................................................................5

## STATUTES

California Business and Professions Code

    Section 17200..............................................................................8

California Civil Code

    Section 2923.4.............................................................................7
    Section 2923.55...........................................................................7
    Section 2923.7.............................................................................7
    Section 2924.6.............................................................................7
    Section 2924.9.............................................................................7
    Section 2924.15...........................................................................7

## INTRODUCTION

Plaintiff Willie York ("Plaintiff") moves this Court for a temporary restraining order and preliminary injunction to restrain defendants Bank of America, ("B of A") ") and Champion Mortgage ("Champion") from foreclosing on his home of more than forty-five years. The trustee's sale is scheduled in less than a week for June 4, 2014.

## STATEMENT OF FACTS

As set forth in the accompanying declaration, Plaintiff is seventy-eight years old. Plaintiff and his late wife purchased a home located at 80 Conkling Street in the Bayview district of San Francisco in 1969 ("Home"). Since that time, the Home has been Plaintiffs only residence and he has live in it continuously for more than forty-five years.

Plaintiff left school in the third grade and went to work. He worked all of his life as a laborer and presently lives on his social security income of approximately $950 per month. He is in good health, except for a heart problem and lives with his grandson, Durrel. He is illiterate and financially naive. He has never had or used a checking account. Like many people in low-income communities, he pays his bills with money orders that are made out by the store clerk at the direction of the purchaser.

In 2007, a reverse mortgage loan broker, Thomas Perkins ("Perkins"), who worked for Reverse Mortgages of America came to the door of Plaintiff's Home. Plaintiff was not at home, but Perkins left a message for him. The message was that Perkins "had money for him" and that Plaintiff should get in touch with him. Plaintiff responded by contacting Perkins and they later met at the Plaintiff's Home. Perkins explained that he represented a lot of lenders who could get Plaintiff money and that because the money came through a reverse mortgage, secured by the equity in the Home, Plaintiff would not have to make any payments on the Home for as long as he lived. Plaintiff needed money to make repairs to his Home and agreed to the loan that Perkins

MEMORANDUM OF POINTS AND
AUTHORITIES

1   proposed. A reverse mortgage was attractive to Plaintiff because the salesman told him that the

2   existing loan on the Home would be completely paid off, that he could get the money he needed

3   to repair his Home, that he would not have to make any payments on the Home as long as he

4   lived and that any value left in the Home when he passed away would go to Plaintiff's heirs.

5       On or about June 25, 2007, Perkins brought papers to the Plaintiff's Home. Perkins said

6   they were papers for a loan with the B of A and asked Plaintiff to sign the papers. Perkins

7   flipped through the papers showing Plaintiff where he had to sign his name. The meeting lasted

8   only long enough for Perkins to obtain Plaintiff's signatures.

9

10      Perkins also provided a contractor do the repairs to the plaintiff's Home, Alexander

11  Restoration Inc. ("Alexander"). Perkins brought Alexander to the Plaintiff's Home and

12  Alexander and Plaintiff agreed on the repairs to be made. On April 3, 2008, Alexander and

13  Plaintiff came to an agreement about what repairs were to be made and Plaintiff signed a

14  contract with Alexander for thirty-eight thousand five hundred dollars ($38,500). Over a period

15  of months in 2008, Perkins would present checks to Plaintiff for his signature saying they were

16  to pay Alexander for work on the house. On several occasions Plaintiff objected saying the work

17  was not properly done, but when Perkins pressured him, the Plaintiff signed the checks.

18

19      Because of his lack of education, and inexperience in financial matters Plaintiff relied on

20  the broker, Perkins, as his fiduciary, to fairly and accurately represent the nature of the loan and

21  the finances related to it.

22

23      The documents relating to the 2007 reverse mortgage show that an account was

24  established in Plaintiff's name on July 9, 2007 at Principal Financial Group. An initial draw on

25  this account was made in the amount of $108,113.26 and that as of August 27, 2007, there was a

26  balance of $111,807.55 in that account. Beginning in 2007, and over a period of 2 years, this

27  account was entirely depleted. Plaintiff did not draw any money from this account nor did he

28

1   authorize anyone to draw on this account.  The two other people who might have had access to

2   Plaintiff's Home and the papers, his grandson, Durrel and his daughter, Janice, have no

3   knowledge of accounts in Plaintiff's name and did not draw money from any account in

4   Plaintiff's name.

5        In June 2009 there was further loan activity relating to the Plaintiff's Home.  The B of A

6   apparently made a second or further reverse mortgage in the amount of $78,000.  Plaintiff did

7   not request a mortgage in 2009, he did not sign any loan papers in 2009, nor did not authorize

8   anyone to obtain a loan in his name.  Plaintiff did not get any money from such a loan.  Later in

9   2009, Plaintiff received a letter on City and County of San Francisco letterhead.  He was told

10  that the letter said that he owed property taxes on his Home and he went down to San Francisco

11  City Hall, prepared to make a payment.  The Clerk at City Hall told Plaintiff that the lender, B of

12  A, had already made the property tax payment.  This was consistent with what the loan broker,

13  Perkins had told him; that he would not have to make any payments on the Home in his lifetime

14  and therefore confirmed Plaintiff's understanding that B of A would make the future payments.

15       About a year ago, Plaintiff got another letter, this time from the B of A, telling him he

16  was in arrears on his property tax payments.  Plaintiff's daughter called B of A on Plaintiff's

17  behalf and after her conversation with the B of A representative, Plaintiff understood, for the

18  first time, that he was obligated to pay taxes and insurance on the Home.  Plaintiff's daughter,

19  Janice, made an agreement with the B of A to pay $200 a month until the property tax and

20  insurance arrears were paid off.  Janice asked for, but did not get a written confirmation of the

21  property tax repayment plan she worked out with the B of A, nonetheless, 10 payments were

22  made to B of A in accord with the $200 a month agreement.

23       Despite their agreement not to foreclose if Plaintiff paid $200 a month, B of A and their

24  agent and servicer, Champion, proceeded with the foreclosure .  On or about May 24, 2014

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES

1  another notice of sale was left at the Home, stating that Plaintiff was in default on the purported

2  2009 reverse mortgage and setting the sale date for June 4, 2014 at 2 P.M.  See Exhibit 1.

3      Despite numerous calls to the number given on the original notice of sale, Plaintiff's

4  counsel has been unable to speak to anyone who could provide information regarding the

5  imminent sale of the Plaintiff Home.   A Qualified Written Request ("QWR") seeking

6  information regarding the loans in question, pursuant to the Real Estate Settlement Procedure

7  Act ("RESPA") was mailed, on Plaintiff's behalf, by Bayview Hunters Point Community Legal

8  ("BVHPCL").    See Exhibit 2.    Pursuant to TILA, Plaintiff should have received an

9  acknowledgement of the QWR within 5 days of mailing. To date, BVHPCL has received no

10  substantive response to the QWR.   Consequently, Plaintiff and his counsel are unable to verify

11  the property transactions and signatures on the loans and the withdrawals of monies related to

12  the 2007 and the purported 2009 reverse mortgage loans.

13

14      Plaintiff has owned only one home for more than forty-five years.  He has no place to go

15  if he loses his Home and the equity it represents.   As set forth below, Plaintiff is entitled to

16  enjoin the pending foreclosure so as to prevent the loss of his home.

17

18  ARGUMENT

19  **PLAINTIFF SEEKS AND IS ENTITLED TO A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION PREVENTING THE FORECLOSURE
OF HIS HOME PENDING RESOLUTION OF THIS ACTION.**

20      Plaintiff seeks a temporary restraining order and preliminary injunction enjoining

21

22  Defendants from foreclosing on his home pending the resolution of this case.

23  **A. Legal Standards for Provisional Injunctive Relief**

24      The test for a temporary restraining order and a preliminary injunction are substantially

25  identical. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir.

26  2001).  The purpose of such relief is to preserve the status quo and to prevent irreparable harm

MEMORANDUM OF POINTS AND
AUTHORITIES

until the underlying action can be resolved. *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

In determining whether to grant such relief a court applies the following factors: (1) whether the moving party is likely to succeed on the merits; (2) whether the moving party is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4) whether the injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); see also *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The Ninth Circuit continues to apply a "sliding scale" approach to these factors. *Id.* at 1134. Thus, a "preliminary injunction is appropriate when a plaintiff demonstrates ... that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* at 1134-1135. "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. As set forth below, preliminary injunctive relief should be granted in this case.

**B. Plaintiff is Likely To Prevail on the Merits.**

In order to show likelihood of success on the merits, a plaintiff does not need to prove an overwhelming likelihood of success, but rather a reasonable probability of success. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). A likelihood of success may be found even where there is merely a better than negligible chance of succeeding on the merits. *Washington v. Indiana High School Athletics Ass'n, Inc.*, 181 F.3d 840, 846 (7th Cir. 1999). Given the facts set forth above, Plaintiff has a reasonable probability of success on his claims as set forth below.

MEMORANDUM OF POINTS AND
AUTHORITIES

**1. The 2009 mortgage is likely a forgery, consequently, the Deed of Trust on which the foreclosure is based is void and Plaintiffs have no basis for foreclosure.**

On or about 2009, Defendant B of A made and recorded a mortgage and lien on the Home in the amount of approximately $78,000.  Plaintiff has no knowledge of such a mortgage loan. He did not discuss such a loan with anyone, did not sign any papers relating to a loan in 2009, did not authorize anyone to obtain such a loan in his behalf and did not receive any benefit from the purported loan.  Consequently, there is a strong reason to believe that the 2009 loan, which is the basis of the foreclosure that it the subject of this action, was false, fraudulent and a forgey. Fraudulent or forged signatures void the Deed of Trust.  A deed is void if the grantor's signature is forged or if the grantor is unaware of the nature of what he or she is signing.  *Erickson v. Bohne*, 130 Cal.App.2d 553, 555-556 (1955).  "A forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor."  *Schiavon v. Arnaudo Brothers* 84 Cal.App.4th 374, 378 (2000).  The 2009 Deed of Trust is likely forged and consequently void and cannot be the basis of the foreclosure sale scheduled for June 4, 2014.

**2.    Plaintiff's have failed to comply with the Homeowner's Bill of Rights, a prerequisite to foreclosure.**

In July 2012, California Governor Jerry Brown signed the Homeowner Bill of Rights ("HBOR") to combat the foreclosure crisis.  HBOR applies to foreclosures of first liens on owner-occupied, one-to-four unit properties.  Cal. Civ. Code §2924.15(a).  HBOR provides procedural protections to foster alternatives to foreclosure. Cal. Civ. Code § 2923.4(a).

On January 1, 2013, the California Homeowner Bill of Rights went into effect and offers homeowners greater protection during the foreclosure process.  Cal. Civ. Code§ 2923.6(b). Section 2923.6(b) states "it is the intent of the legislature that the mortgage servicer offer the

MEMORANDUM OF POINTS AND
AUTHORITIES

1  borrower a loan modification or work out a plan if such a modification or plan is consistent with

2  its contractual or other authority."

3      Defendants seek to deny Plaintiff the protections of the HBOR by falsely alleging that the

4  property is not owner occupied.  Defendants filed a declaration of contact or due diligence

5  required by Civil Code 2923.55, purportedly based on the mortgage servicer's business records,

6  and signed by an employee of Champion.  The declaration falsely claims that first lien mortgage

7  or deed of trust is not on "owner occupied" residential real property. See Exhibit 3.

8

9      The fact is that Plaintiff has occupied his Home as his residence for more than forty-five

10  years. (Plaintiff's Dec., Para 4.)  Plaintiff is consequently entitled to the protections of the HBOR

11  which provides that a servicer must contact the homeowner to discuss alternatives to foreclosure

12  at least 30 days prior to recording a Notice of Default ("NOD"). *See* Cal. Civ. Code §§ 2923.5(a)

13  & 2923.55(a) [applying to small and large servicers, respectively].  HBOR provides specific

14  requirements on the nature and content of the communication.  The due diligence requirements

15  apply to small and large services, respectively.  See Cal. Civ. Code §§ 2923.5(e)(1)-(5),

16  2923.55(f)(1)-(5) (2013).  Because Champion alleged the Home was not owner occupied,

17  Champion did not contact Plaintiff to discuss alternatives to foreclosure.

18

19      HBOR also requires post-NOD outreach if the borrower has failed to request a loan

20  modification before an NOD was recorded.  Cal. Civ. Code § 2924.9 [requiring servicers that

21  routinely offer foreclosure alternatives must contact the borrower within five days of the NOD

22  recordation, explain those alternatives, and explain exactly how to apply for them].  No such post

23  NOD outreach was initiated by Champion because believed, in error, that Plaintiff's Home was

24  not owner occupied.

25

26      Finally, large servicers such as Champion must provide a single point of contact (SPOC)

27  to borrowers.  Cal. Civ. Code § 2923.7 (2013); *see Lapper v. Suntrust Mortg., N.A.*, 2013 WL

28

2929377, at *3 (C.D. Cal. June 7, 2013) [finding borrower's allegation that she never received a SPOC sufficient to show a likelihood of success on the merits for a TRO]; *Senigar v. Bank of Am.*, No. MSC13-00352 (Cal. Super. Ct. Feb. 20, 2013) [to the same effect].

**3. Defendants actions constitute unfair competition in violation of California Business and Professions Code section 17200.**

Defendants' actions also constitute unfair competition. Unfair competition is no limited to conduct that is unfair to competitors, but California Business and Professions Code section 17200 defines unfair competition to include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising. An unfair business act or practice is boadly defined. *Hauck v. JP Morgan Chase Bank USA.*, 552 F.3d 1114, 1122 (9th Cir. 2009). The broad language enables courts to deal with the innumerable new schemes which the fertility of man's invention would contrive. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal.App.4th 700, 718 (2001). An unfair business act or practice need only meet one of the three statutory criteria: it can either be unlawful, unfair or fraudulent. *Morris v. Redwood Empire Bancorp*, 128 Cal.App.4th 1305, 1313 (2005); see *Quaccha v. DaimlerChrysler Corp.*, 122 Cal.App.4th 1442, 1452-1453 [unfair even if not prohibited by law]. Defendants' actions in this attempt to circumvent the HBOR meet all of these criteria.

**C. The Threatened Foreclosure of Plaintiffs' Home Constitutes Irreparable Harm.**

Foreclosure on Plaintiff's Home constitutes precisely the kind of irreparable harm that can only be prevented by the grant of preliminary injunctive relief. *See Sundance Land Corp. v. Community First Federal Savings and Loan Association*, 840 F.2d 653, 661-662 (9th Cir. 1988). [plaintiff alleged that, in the absence of injunctive relief against foreclosure on property, it would lose the property; held, plaintiff entitled to equitable relief]; see also *Castillo v. Skoba*, 2010 U.S. Dist. LEXIS 108432 at *4 (2010) [irreparable harm from sale of home]; *Wadhwa v. Aurora Loan Services, LLC*, 2011 U.S. Dist. LEXIS 73949 at *6 (2011) [irreparable harm from being evicted

MEMORANDUM OF POINTS AND AUTHORITIES

from home].   Thus, allowing the foreclosure sale to go forward will cause irreparable harm to Plaintiff.

**D.  Balance of Hardships Favor Plaintiff.**

The balance of hardships in this case indisputably favors the granting of injunctive relief. See *Castillo*, 2010 U.S. Dist. LEXIS 108432 at *4; *Jackmon v. America's Servicing Company*, 2011 U.S. Dist. LEXIS 93696 at *10 [loss of home through eviction greatly outweighs financial harm to bank].   Should the foreclosure be permitted to go forward, Plaintiff will be homeless at a time when he is elderly and vulnerable.   On the other hand, there is absolutely no indication that the B of A or Champion will be significantly inconvenienced or irreparably damaged if the foreclosure is delayed.

**E.  Public Interest Favors Granting Injunctive Relief to Prevent Foreclosure**

"The public interest is served by affording homeowners the opportunity to pursue facially valid claims before their homes are sold."  *Castillo*, 2010 U.S. Dist. LEXIS 108432 *5.   Here, there is good reason to believe that the loan on which this foreclosure is based is false fraudulent and likely forged.   Further, the protections enacted by the California legislature to protect homeowners in circumstances just like those at bar have been circumvented by the defendants. The public interest in accurately recording title to real property and the protections afforded by its legislators requires a stay of the scheduled foreclosure sale.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that their application be granted and that the Court issue:

1. An Order to Show Cause why a Preliminary Injunction should not be issued enjoining Defendants and their officers, agents, servants, employees, and all persons acting in concert with them, or on behalf of them, pending trial of this action from directly or indirectly initiating

MEMORANDUM OF POINTS AND
AUTHORITIES

1   foreclosure proceedings on a property owned by Plaintiff Willie York, located at 80 Conkling

2   Street, San Francisco, California.

3       2.   A Temporary Restraining Order enjoining Defendants and their officers, agents,

4   servants, employees, and all persons acting in concert with them, or on their behalf, pending trial

5   of this action from directly or indirectly initiating foreclosure proceedings on a property owned

6   by Plaintiff Willie York located at 80 Conkling Street, San Francisco, California.

7

8

9   DATED: May 29, 2014          Respectfully submitted,

10                         LAW OFFICES OF ROBERT KANE

11                         Bay View Hunters Point Community Legal

12

13                         By:___s/Robert F. Kane_____

14                             ROBERT F. KANE

                             ATTORNEY FOR PLAINTIFF

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND
AUTHORITIES