UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, et al.,<br><br>    Defendants. | Case No. 14-cv-02471-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |

## I.  INTRODUCTION

Plaintiffs Willie York and Carolyn York Miles own as tenants in common a house at 80 Conkling Street in San Francisco, where they have lived for over forty-five years.  York and Miles claim that they were victims of predatory lending practices at the hands of Defendants (1) Bank of America ("BOA"), (2) Champion Mortgage Company, (3) Stephen Talcott, (4) James B. Nutter and Company ("JBN"), (5) Thomas Perkins, (6) Reverse Mortgages of California, Inc. ("RMC"), and (7) Agnes McNamara.  Plaintiffs filed their first amended complaint ("FAC"), and Defendants filed various motions to dismiss the claims lodged against them, which resulted in an order granting the motions in part with leave to amend.  Plaintiffs have since filed a second amended complaint ("SAC") with new averments, alleging violations of federal and California law.

BOA, Talcott, and JBN now move to dismiss all of the claims lodged against them.  Champion seeks to dismiss the claim for violations of the Real Estate Settlement Procedures Act ("RESPA") (Claim 2), 12 U.S.C. § 2605(e)(1)(B).  This matter is suitable for disposition without oral argument pursuant to Local Rule 7-1(b).  For the reasons discussed below, these motions are

granted in part with partial leave to amend and denied in part. Plaintiffs will have one final opportunity to advance claims against JBN and BOA only if, in good faith, they can and do include facts to support those claims.

## II.  BACKGROUND[1]

York, eighty-eight years old, has resided continuously at his home in San Francisco for the past forty-five years. He is illiterate having left school after the third grade to begin work as a laborer. York no longer works and subsists on his Social Security income of $950 per month.

In early 2007, Perkins, a reverse mortgage broker for RMC who "had past relationships" with BOA and Champion, approached York claiming to have money for him. SAC ¶¶ 21, 50. Intrigued by this possibility, York met with Perkins in the spring or summer of 2007, and Perkins explained that completing a reverse mortgage on the Conkling property would benefit York in three ways: (1) York could receive money; (2) he would not have to make payments on the property "for the rest of his life"; and (3) the property would pass to his heirs. SAC ¶¶ 22-23. Attracted by this proposal, York agreed to have Perkins complete the application for a reverse mortgage on his behalf so that he could pay off his home loan completely and receive money to make necessary repairs to the house.

### A. First Reverse Mortgage

On June 25, 2007, Perkins came to York's house with the requisite loan documents to sign. During that meeting, Perkins flipped through the papers, pointing out where York should sign. The meeting was brief—"only long enough for Perkins to obtain the necessary signatures" for the reverse mortgage loan with lender JBN. SAC ¶¶ 11, 24.

Miles's name also appeared on the title to the home, and so Perkins conspired with a friend of the York family, Norma Faye Maxwell, to forge Miles's signature on the deed grant.[2] Talcott, a California notary public, notarized the deed grant with Miles's forged signature even though Miles

---

[1] Because Defendants have filed a motion to dismiss, all facts are taken as alleged in the SAC.

[2] Plaintiffs have not named Maxwell as a party to his suit.

never signed the document in his presence.

After York received the money promised in the reverse mortgage, Perkins arranged for Alexander Restoration, Inc. ("ARI"), to repair York's home for $38,500. At Perkins's insistence, York signed checks made payable to ARI despite his objections to the quality of the work. In addition, Perkins invested the remaining proceeds of the 2007 Reverse Mortgage with the Principal Financial Group without York's consent—a transaction for which Perkins received a fee. As of August 27, 2007, the balance on the account was $111,807.55. Within two years, the account had been depleted completely. In addition, Maxwell periodically accompanied York to the local "check cashing" establishment and had him endorse checks from the proceeds of the 2007 Reverse Mortgage.

**B.  Second Reverse Mortgage**

In July 2009, Perkins brokered a second reverse mortgage with BOA in the amount of $78,000, using the Conkling property as collateral. Neither York nor Miles were aware that Perkins had applied for this second reverse mortgage. They neither signed the loan papers nor authorized anyone to enter into the agreement on their behalf. York did not learn about the second reverse mortgage until several years later.

In 2009, York received a letter from the City and County of San Francisco, informing him that he owed property taxes on his home. Maxwell accompanied York to City Hall to make the payment, where a city clerk informed York that BOA had already paid the property taxes. This information led York to believe that BOA would make all future payments on his behalf as Perkins had promised.

Sometime in 2013, York received a letter from BOA, informing him that he was in arrears on his property tax payments. York's daughter, Janice Hardy, called BOA on York's behalf to gather information about the basis for the letter and how to address its demands. After that conversation, York understood for the first time that he was obligated to pay taxes and insurance on his home. Hardy negotiated an agreement with a BOA representative to permit York to pay $200 per month until the property tax and insurance arrears were paid in full. Hardy requested,

but never received, written confirmation of the agreement. Nonetheless, York sent ten monthly payments of $200 to BOA, all of which were deposited.

BOA and its agent/servicer, Champion, initiated foreclosure proceedings despite York's compliance with the arrears payment plan. In April 2014, York received a notice of trustee sale on his home to take place on June 15, 2014. On May 24, 2014, he found another notice of sale to occur on June 4, 2014, resulting from default on the 2009 reverse mortgage. These notices stated that the property was not owner-occupied even though "Champion was well aware that the Home was owner occupied" because it "had sent independent inspectors to the Home" and verified the occupancy "in conversations with York's daughter Janice [Hardy]." SAC ¶ 34. To prevent the foreclosure and understand what had happened, York sought the assistance of Bayview Hunters Point Community Legal ("Bayview"). Together they sent BOA a Qualified Written Request ("QWR") pursuant to RESPA, seeking information about the loan and servicing history. BOA replied by letter, advising York that Champion now owns the 2009 reverse mortgage. Champion eventually responded to the QWR, but did not "provide[] sufficient information . . . to understand the complete history of these troublesome loans," "the details of these loans," and "the payment of and disbursements of moneys related to the . . . 2009 Reverse Mortgage." SAC ¶ 36.

York filed the FAC in this lawsuit along with a request for a temporary restraining order to halt the foreclosure sale. BOA and Champion were ordered to file written responses, but they did not do so by the court-ordered deadline. Accordingly, a TRO issued on June 3, 2004, ordering the defendants to show cause why a preliminary injunction should not be entered upon expiration of the TRO. The parties agreed to continue the hearing on plaintiffs' motion for a preliminary injunction, but when Champion rescinded the notice of default and action to foreclose on York's home, the request for injunctive relief was denied as moot.

Subsequently, BOA, Champion, Talcott, JBN, and Perkins moved to dismiss various claims in the FAC. On June 8, 2015, those motions were granted in part with leave to amend the FAC and denied in part. Subsequently, plaintiffs filed the SAC. BOA, Champion, Talcott, and JBN each now move to dismiss all or some of the claims in the SAC.

### III. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required," but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "in allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud and mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, a plaintiff must plead "the who, what, when, where, and how that would suggest fraud." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). "A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and alteration omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in the complaint. Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). When plaintiffs have failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be

saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

## IV. DISCUSSION

### A. Claims Against JBN

All claims in the FAC against JBN were dismissed with leave to amend because the complaint "contain[ed] no facts to suggest JBN was aware of the misrepresentations that induced York to sign the loan documents, let alone complicit in any wrongdoing." R. 80 at 6 (Order Re: Mots. to Dismiss FAC). The SAC fares no better. Plaintiffs have reasserted claims against JBN for unfair business practices (Claim 5), rescission and restitution (Claim 7), and declaratory relief (Claim 9). There are but two factual assertions specifically relating to JBN in the complaint: that "[JBN] is a money lender" and "the lender who made the 2007 Reverse Mortgage on the Home." SAC ¶ 11. All other factual assertions refer to the actions of multiple defendants without specific reference to JBN.

In support of Claim 5, plaintiffs claim that "all Defendants," presumably including JBN, "engaged in unfair, illegal, and fraudulent business practices," SAC ¶¶ 69-70, but do not include any factual assertions about which of JBN's business practices are properly so characterized. Simply put, plaintiffs have not provided "the who, what, when, where, and how that would suggest" that JBN engaged in fraud, illegal conduct, or unfair practices, *Cooper*, 137 F.3d at 627, and the claim against him therefore lacks sufficient factual support.

Rescission is a remedy for breach of contract "based on disaffirmance of the contract." *See Akin v. Certain Underwriters at Lloyd's London*, 44 Cal. App. 4th 291, 296 (2006). Rescission of a contract is a proper remedy if "the consent of the party rescinding . . . was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." Cal. Civ. Code § 1689(b)(1).

Plaintiffs apparently seek to rescind the 2007 reverse mortgage on the basis of invalidity by reason of mistake, fraud, undue influence, and forgery. To support this contention, plaintiffs aver "Defendants . . . intentionally conceal[ed] from York that York would have to pay taxes and

1    insurance for the Home" and participated in forging Miles's signature.  SAC ¶ 78.  They do not

2    provide any factual basis, however, to surmise who the parties to the mortgage agreement are and

3    whether JBN or any other engaged in fraud.  Without more information, Claim 7 also fails.

4         Because plaintiffs have not stated viable substantive claims, their claim for declaratory

5    relief cannot advance.  *See Soares v. ReconTrust Co., N.A.*, No. 12-00070, 2012 WL 1901234, at

6    *7 (N.D. Cal. 2012) ("[A] declaration that the subject loan agreements are void and unenforceable

7    . . . is ultimately a request for relief, and [the plaintiff] is not entitled to such relief absent a viable

8    underlying claim." (internal citation omitted)).  Plaintiffs have not provided any information about

9    whether JBN has any existing interest in the Conkling property, and thus have not pleaded an

10   actual controversy involving it.

11        While the deficiencies in the SAC do not appear to be incurable, they have now had

12   several opportunities to supply requisite information.  Plaintiffs make many factual assertions

13   about JBN's conduct and business practices in their opposition to the motion to dismiss that

14   theoretically could support a cause of action—none of which appear in the SAC.  Plaintiffs will be

15   afforded a final opportunity to advance claims against JBN, but only if in good faith they can and

16   do include such facts within any amended complaint.

17        **B.  Claims Against Talcott**

18        The SAC includes four claims against Talcott:  aiding and abetting financial abuse (Claim

19   3), unfair business practices (Claim 5), rescission and restitution (Claim 7), and declaratory

20   judgment (Claim 9).  Each of these claims relates to Talcott's notarization of Miles's forged

21   signature on the documents for the 2007 reverse mortgage.  Plaintiffs' claims against Talcott in the

22   FAC were dismissed because they were based entirely on Talcott's alleged notarial malfeasance; a

23   claim which must be filed within six years of the alleged misconduct in accordance with

24   California Code of Civil Procedure § 338(f).

25        To get around this six-year statute of limitation, plaintiffs aver that Talcott was acting as an

26   individual—not as a notary public—when he notarized the forged signature because he did not

27   comply with the requirements of California Civil Code §§ 1188 and 1189.  According to plaintiffs,

28

Talcott's failure to follow the California Civil Code to the letter transformed the act of notarizing the documents into a private action. At the core, however, plaintiffs' claims rest on the theory that Talcott abused his position as a notary public, which is simply another way to define notarial malfeasance. Thus, plaintiffs supplied no facts to suggest that their claims against Talcott somehow escape the applicable statute of limitations. Accordingly, as any amendment at this stage would be futile, the claims against Talcott are dismissed without leave to amend.

### C.  RESPA Claim Against Champion

As in the FAC, the SAC avers that Champion violated RESPA by failing to respond adequately to the plaintiffs' QWR. Plaintiffs' first attempt to plead a RESPA claim failed because the FAC "lack[ed] a clear description of damages plaintiffs may have suffered as a proximate result of Champion's alleged shortcomings in responding to York's inquiry." R. 80 at 8 (Order Re: Mots. to Dismiss FAC). In the SAC, York avers that he "incurred the cost of traveling to the County Recorder's, as well as, the costs of photocopying documents." SAC ¶ 45. In addition, Miles claims that she also incurred the cost of photocopying and that "as a result of Champion's failure to respond to the QWR, in that as a result of a forged deed, her credit reports indicated that her half of the Home was encumbered by a reverse mortgage," which "limited her access to further credit." *Id.*

Under RESPA, 12 U.S.C. § 2605(e), a loan servicer that receives a QWR from a borrower or borrower's agent must respond in writing. To state a cognizable harm under RESPA, plaintiffs must aver "actual, cognizable damages *resulting from the Defendants' failure to respond to QWRs.*" *Tamburri v. Suntrust Mortg., Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012) (emphasis in original). RESPA does not provide for injunctive relief, and therefore "actual damages and, in the case of a pattern or practice, statutory damages, are the only remedies available when a servicer violates the above provisions." *Id.* at 1013. (citing 12 U.S.C. § 2605(f)(1)). "Courts have interpreted this requirement to plead pecuniary loss liberally." *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (internal quotation marks and brackets omitted). Examples of cognizable pecuniary losses include the failure properly to

credit payments made on the mortgage, incorrectly calculating interest, and reporting late payments to credit bureaus. *Tamburri*, 875 F. Supp. 2d at 1014-15 (collecting cases). Costs incurred to repair credit also qualify as cognizable pecuniary losses. *Johnson v. HSBC Bank USA, Nat'l Ass'n*, No. 3:11-cv-2091-JM-WVG, 2012 WL 928433, at *6 (S.D. Cal. Mar. 19, 2012). "[F]iling suit generally does not suffice as a harm warranting actual RESPA damages," however, "because, if it did, every RESPA suit would have a built-in claim for damages." *Soriano v. Countrywide Home Loans, Inc.*, No. 09-CV-02415-LHK, 2011 WL 2175603, at *4 (N.D. Cal. June 2, 2011) (internal quotation marks and brackets omitted).

Only some of the pecuniary losses averred in the complaint qualify as cognizable actual damages proximately caused by Champion's failure to respond to York's QWR. Champion contends that the only pecuniary losses averred in the complaint arguably caused by its failure to respond satisfactorily to the QWR are the travel and copying costs, which are merely costs connected with filing suit, and are therefore unrecoverable under RESPA. However, construing the facts in the complaint in favor of plaintiffs, they have adequately pleaded facts reflecting that they incurred travel and copying expenses in their quest to uncover information about their tax and insurance obligations—information that should have been disclosed in the response to the QWR. Miles, by contrast, has not pleaded actual damages from the alleged RESPA violation because, by her admission, the forged deed caused only her negative credit ratings. She has yet to connect Champion's failure to respond to the QWR to such ratings problems.

Finally, plaintiffs claim a right to statutory and punitive damages, but do not aver that Champion engaged in a pattern and practice that would warrant statutory damages under 12 U.S.C. § 2605(f)(1). Accordingly, York and Miles have adequately pleaded a RESPA claim against Champion to the extent that they have connected photocopying and travel expenses to Champion's failure to respond to the QWR. Miles, however, has not pleaded actual damages in the form of a negative credit rating. Champion's motion to dismiss is therefore denied as to York and granted as to Miles with leave to amend to the restricted extent that she can aver in good faith

a factual nexus between Champion's failure to respond to the QWR, her negative credit rating, and any actual damages incurred.[3]

### D. Claims Against BOA[4]

Many—but not all—claims against BOA in the FAC were dismissed with leave to amend. In their SAC, plaintiffs lodge five claims against BOA:  Elder Financial Abuse (Claim 2), Aiding and Abetting Elder Financial Abuse (Claim 3), Unfair Business Practices (Claim 5), Rescission and Restitution (Claim 7), and Declaratory Judgment (Claim 9).  BOA moved to dismiss the claims against it in the FAC, which was denied as to the claims of elder financial abuse, rescission and/or restitution, and declaratory judgment in the FAC, but granted with respect to all other claims.  BOA now moves to dismiss all of the claims in the SAC, offering new reasons to dismiss the claims of financial elder abuse, rescission and/or restitution, and declaratory judgment.

1. <u>Elder Financial Abuse (Claim 2) and Aiding and Abetting Elder Financial Abuse (Claim 3)</u>

Elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates or retains real or personal property of an elder" or assists in doing so "for a wrongful use or with intent to defraud, or both."  Cal. Wel. & Inst. Code § 15610.30(a)(1), (2).  "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult" sixty-five years of age or over.  *Id.* §§ 15610.27, .30(b).  Thus, a plaintiff must aver (1) that the defendant took, secreted, appropriated or retained real or personal property, (2) of an elder, (3) for a wrongful use or with intent to

---

[3] In plaintiffs' opposition to the motion to dismiss the RESPA claim, they reference additional pecuniary losses and emotional distress.  If plaintiffs elect to file an amended complaint, only those damages averred will be considered.

[4] BOA has filed a request for judicial notice of the 2007 and 2009 deeds of trust, the 2013 assignment of deed of trust, notice of default and election to sell under deed of trust, and notice of rescission of declaration of default and demand for sale.  These documents are not material to resolution of this motion to dismiss, and therefore the request is denied as moot.

defraud, or both. A person does not wrongfully use real or personal property if he "lend[s] money, take[s] collateral, or . . . foreclose[s] on collateral when a debt is not paid." *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2012) (internal quotation marks omitted).

In the FAC, plaintiffs stated viable claims for financial elder abuse against Perkins, Champion, and BOA. This court's order, however, noted that if "plaintiffs elect to aver that BOA bears liability for Perkins' actions as well, they must make that contention clear in a further amended complaint." R. 80 at 13 (Order Re: Mots. to Dismiss). Plaintiffs have now averred that BOA "had past relationships with Perkins and RMC in connection with originating and/or purchasing reverse mortgages that were secured by the homes of protected elders." SAC ¶ 50. BOA correctly points out that this is not sufficient to establish an agency relationship between BOA and Perkins or BOA and RMC. "An agency relationship exists where a principal authorizes an agent to represent and bind the principal." *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1056 (E.D. Cal. 2009) (citing Cal. Civ. Code § 2295). The existence of a "past relationship" does not establish that BOA authorized Perkins to represent and bind it, and therefore plaintiffs have not pleaded a valid claim for elder financial abuse against BOA on an agency theory of liability. BOA's motion, therefore, must be granted but with leave to amend.

BOA further contends that plaintiffs have not pleaded facts establishing wrongful use of property, while overlooking that plaintiffs may alternatively plead that BOA acquired the property with intent to defraud an elder. Plaintiffs' SAC states a viable claim for financial elder abuse on the theory that BOA never intended to make good on its promise not to foreclose on the Conkling property or assess fees in exchange for regular payment of $200 each month. Thus, plaintiffs' financial-elder-abuse claim against BOA may advance.

To support the claims of financial elder abuse and aiding and abetting financial elder abuse, plaintiffs also aver that BOA wrongfully acquired a right to the Conkling property by failing properly to underwrite the 2009 reverse mortgage. They claim that BOA's improper underwriting "enabled Perkins and RMC to take property from York." SAC ¶ 59. These factual assertions fail to show, however, that BOA knew or should have known that the improper

1    underwriting would harm York.  Nor have plaintiffs averred that BOA was aware or should have
2    known that York was sixty-five years old or older.  Thus, as pleaded, plaintiffs have not stated
3    viable claims for financial elder abuse or aiding and abetting financial elder abuse against BOA
4    on the basis of BOA's allegedly deficient underwriting procedures.  BOA's motion to dismiss
5    Claim 3 is granted with leave to amend.

2.  <u>Unfair Business Practices (Claim 5)</u>

Section 17200 of California's Unfair Competition Law ("UCL") prohibits all unlawful, unfair, or fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200 *et seq*.  Each of these three types of business acts or practices are independently actionable; "a plaintiff may show that the acts or practices at issue are either unlawful *or* unfair *or* deceptive."  *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002).  "A business practice is 'unlawful' if it is forbidden by law."  *Id.* (internal quotation marks omitted).  "Unfair" business practices are those which "offend[] an established public policy"; are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or those which do not outweigh "the gravity of the harm to the alleged victim."  *Id.* at 1169-70 (internal quotation marks omitted).  Finally, a business practice is "deceptive" if "members of the public are likely to be deceived."  *Id.* at 1170.

BOA contends that the UCL's four-year statute of limitations bars plaintiffs' claim.  California Business and Professional Code § 17208 requires that "[a]ny action to enforce any cause of action pursuant to [the UCL] . . . be commenced within four years after the cause of action accrued."  BOA entered into the 2009 reverse mortgage on the Conkling property in May 2009—five years before plaintiffs filed their complaint.  "[O]rdinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action."  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191 (2013) (internal quotation marks omitted).  The UCL incorporates the generally applicable discovery rule, which, "where applicable postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."  *Id.* at 1192, 1196 (internal quotation marks omitted).  Thus, plaintiffs' UCL claim did not "accrue"

1   until they discovered BOA's unlawful, unfair, or deceptive business practice.  According to the
2   complaint York first learned of the 2009 reverse mortgage "[a]bout a year" before he filed his
3   complaint, which is well within the four-year statute of limitations.  SAC ¶ 32.
4   　　　　Although the statute of limitations does not bar plaintiffs' UCL claim, they have not
5   successfully pleaded a claim for which relief can be granted.  Plaintiffs' unfair business practices
6   claim against BOA in the FAC was dismissed for lack of reasonable particularity and for failure to
7   aver that plaintiffs suffered injury as a result of BOA's unfair practice.  In the SAC, plaintiffs aver
8   all three prongs for relief under the UCL:  that BOA's business practices were unlawful *and* unfair
9   *and* fraudulent.  Liberally construing the claims and factual assertions in the SAC, plaintiffs
10  apparently assert that BOA's failure to underwrite adequately the 2009 reverse mortgage and oral
11  agreement for arrears payments were unlawful and unfair.  Plaintiffs have not identified in the
12  SAC which statutes BOA allegedly violated.  Moreover, plaintiffs still have not established that
13  financing a reverse mortgage or asserting its rights under the mortgage agreement make BOA an
14  immoral actor.  Plaintiffs have adequately pleaded a deceptive business practice—entering into the
15  oral agreement without the intent to follow through on the bargain.  The larger problem for
16  plaintiffs, however, is that the SAC still does not connect BOA's allegedly unfair, unlawful, or
17  deceptive practices to tangible economic losses.  Accordingly, plaintiffs have not adequately stated
18  claims against BOA for unlawful, unfair, or deceptive business practices, and BOA's motion to
19  dismiss therefore is granted with leave to amend.
20  　　　　3.   Rescission and/or Restitution (Claim 7)
21  　　　　Although BOA's motion to dismiss plaintiffs' rescission claim in the FAC was denied, it
22  renews its effort to dismiss the claim of rescission and/or restitution.  "A party to a contract may
23  rescind the contract . . . [i]f the consent of the party rescinding, or any party jointly contracting
24  with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence,
25  exercised by or with the connivance of the party as to whom he rescinds . . . ."  Cal. Civ. Code §

1689(b)(1).[5] Moreover, forged documents are void, and therefore title remains in the grantor's name. *Wutzke v. Bill Reid Painting Serv., Inc.*, 151 Cal. App. 3d 36, 43 (1984).

BOA argues that plaintiffs have not pleaded any of the elements necessary to sustain a claim for rescission or identify which instruments they wish to rescind. Plaintiffs have, in fact, averred viable claims for rescission of the 2007 and 2009 reverse mortgages and any contractual obligations flowing from those agreements. In the SAC, plaintiffs aver that the 2009 reverse mortgage between York and BOA and, subsequently, Champion is void because York never signed the deed grant papers. In addition, plaintiffs claim that Miles's signature on the 2007 deed grant conveying her equity in the Conkling property to York was forged, and thus both the 2007 and 2009 reverse mortgages are invalid. The SAC therefore adequately avers that both reverse mortgages came about through forgery and are therefore potentially eligible for rescission.[6] *Wutzke*, 151 Cal. App. 3d at 43.

BOA also challenges the viability of plaintiffs' restitution claim on the ground that plaintiffs have not averred BOA received a benefit to which it was not entitled at the expense of York and Miles. To the contrary, plaintiffs have stated a viable claim for restitution. Restitution is appropriate when a party has been unjustly enriched at the expense of another. *First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992). "Benefit means any type of advantage." *Id.* The SAC avers that BOA obtained a security interest in the Conkling property when it entered into the 2009 reverse mortgage. That security interest is an advantage, and BOA made use of that advantage when it sought arrears on York's property tax payments. Had BOA not asserted a right

---

[5] BOA mistakenly relies on California Civil Code §§ 3412 and 3413, which relate to cancellation of the contract, not rescission.

[6] BOA obliquely suggests that plaintiffs have not pleaded a claim for rescission because the SAC does not aver that they "offer[ed] to pay the full amount of the debt for which the property was security," which is ordinarily a condition precedent for a rescission claim. *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011). Tender is not required, however, when the borrower "attacks the validity of the underlying debt" because tender "would constitute an affirmation of the debt." *Id.* Accordingly, plaintiffs' claim for rescission does not fail for lack of tender.

to payments, then Hardy would not have negotiated a payment plan to prevent foreclosure on the property, and York would not have paid BOA $200 each month for ten months.  The security interest and ten payments benefitted BOA at the expense of York.  Accordingly, Plaintiffs' claim for restitution may advance.

    4. <u>Declaratory Relief (Claim 9)</u>

    To sustain a claim for declaratory relief, plaintiffs must plead facts establishing "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions." *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011).  As with the FAC, the factual averments and legal claims in the SAC demonstrate that there exists a live controversy over the title to York's home, the validity of the grant deed, the 2007 and 2009 mortgage agreements, and arrears payment agreement with BOA.  Thus, BOA's motion to dismiss the claim for declaratory judgment is denied.

## V. CONCLUSION

    In sum, JBN's motion to dismiss is granted with leave to amend; Talcott's motion to dismiss is granted without leave to amend; Champion's motion to dismiss the RESPA claim is denied; and BOA's motion to dismiss is denied in part and granted in part with leave to amend.  Any amended complaint plaintiffs elect to file must be filed within thirty (30) days from the date of this order.  Any new amended complaint will conclude the pleadings process in this case as no further leave to amend will be granted.

**IT IS SO ORDERED**.

Dated:  October 20, 2015

_____
RICHARD SEEBORG
United States District Judge