UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, et al.,<br><br>    Defendants. | Case No. 14-cv-02471-RS<br><br>**ORDER DENYING BANK OF AMERICA'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** |

## I.   INTRODUCTION

Plaintiffs Willie York and Carolyn York Miles own as tenants in common a house at 80 Conkling Street in San Francisco, where they have lived for over forty-five years. York and Miles claim that they were victims of predatory lending practices at the hands of various people and entities, including Bank of America ("BOA"). Plaintiffs have filed a third amended complaint ("TAC"), advancing five claims for relief against BOA: elder financial abuse (Claim 2); aiding and abetting elder financial abuse (Claim 3); violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Claim 5); rescission/cancellation and restitution (Claim 7); and declaratory relief (Claim 9). BOA challenges the viability of each of these claims.

Previously, BOA moved to dismiss plaintiffs' first amended complaint ("FAC"), which resulted in an order granting the motions in part with leave to amend. Subsequently, plaintiffs filed a second amended complaint ("SAC"), which BOA moved to dismiss again. BOA's second motion was granted in part and denied part; Claims 2, 7, and 9 were permitted to advance.

Plaintiffs received one final chance to amend the complaint and to state viable claims for aiding and abetting financial elder abuse and violations of the UCL.

Plaintiffs have since filed a TAC, which BOA seeks to dismiss. This matter is suitable for disposition without oral argument pursuant to Local Rule 7-1(b). As before, plaintiffs' claims for financial elder abuse, rescission and restitution, and declaratory relief may proceed. They have also successfully pleaded claims for aiding and abetting elder financial abuse and violations of the UCL, and so they, too, may advance.

## II.   FACTUAL AND PROCEDURAL HISTORY[1]

Eighty-eight years old Willie York has resided continuously at his home in San Francisco for the past forty-five years. He is illiterate having left school after the third grade to begin work as a laborer. York no longer works and subsists on his Social Security income of $950 per month.

In early 2007, Thomas Perkins, an employee of Reverse Mortgages of California ("RMC"), approached York claiming to have money for him. Perkins had a "past relationship[]" with BOA and Champion "in connection with originating and/or purchasing reverse mortgages that were secured by the homes of protected elders." TAC ¶ 50. Intrigued by this possibility, York met with Perkins in the spring or summer of 2007, and Perkins explained that completing a reverse mortgage on the Conkling property would benefit York in three ways: (1) York could receive money; (2) he would not have to make payments on the property "for the rest of his life"; and (3) the property would pass to his heirs. York agreed to have Perkins complete the application for a reverse mortgage on his behalf so that he could pay off his home loan completely and receive money to make necessary repairs to the house.

### A.  First Reverse Mortgage

On June 25, 2007, Perkins came to York's house with the requisite loan documents to sign. During that meeting, Perkins flipped through the papers, pointing out where York should sign. The meeting was brief—"only long enough for Perkins to obtain the necessary signatures" for the

---

[1] Because Defendants have filed a motion to dismiss, all facts are taken as alleged in the TAC.

reverse mortgage loan with lender James B. Nutter and Company ("JBN").[2]  TAC ¶ 22.  Miles's name also appeared on the title to the home, and so Perkins conspired with a friend of the York family, Norma Faye Maxwell, to forge Miles's signature on the deed grant in the presence of a notary public.[3]

After York received the money promised in the reverse mortgage, Perkins arranged for Alexander Restoration, Inc. ("ARI"), to repair York's home for $38,500.  At Perkins's insistence, York signed checks made payable to ARI despite his objections to the quality of the work.  In addition, Perkins invested the remaining proceeds of the 2007 Reverse Mortgage with the Principal Financial Group without York's consent—a transaction for which Perkins received a fee.  As of August 27, 2007, the balance on the account was $111,807.55.  Within two years, the account had been depleted completely.  In addition, Maxwell periodically accompanied York to the local "check cashing" establishment and had him endorse checks from the proceeds of the 2007 Reverse Mortgage.

### B.  Second Reverse Mortgage

In July 2009, Perkins brokered a second reverse mortgage on York's property with BOA in the amount of $78,000, using the Conkling property as collateral.  Neither York nor Miles were aware that Perkins had applied for this second reverse mortgage.  They neither signed the loan papers nor authorized anyone to enter into the agreement on their behalf.  York did not learn about the second reverse mortgage until several years later.

In 2009, York received a letter from the City and County of San Francisco, informing him that he owed property taxes on his home.  Maxwell accompanied York to City Hall to make the payment, where a city clerk informed York that BOA had already paid the property taxes.  This information led York to believe that BOA would make all future payments on his behalf as

---

[2] JBN was a named defendant in the SAC, and its motion to dismiss the SAC was granted with leave to amend.  Plaintiffs have apparently chosen not to assert claims against JBN in the TAC.

[3] Plaintiffs have not named Maxwell as a party to his suit.

Perkins had promised.

Sometime in 2013, York received a letter from BOA, informing him that he was in arrears on his property tax payments. York's daughter, Janice Hardy, called BOA on York's behalf to gather information about the basis for the letter and how to address its demands. After that conversation, York understood for the first time that he was obligated to pay taxes and insurance on his home. Hardy negotiated an agreement with a BOA representative to permit York to pay $200 per month until the property tax and insurance arrears were paid in full. Hardy requested, but never received, written confirmation of the agreement. Nonetheless, York sent ten monthly payments of $200 to BOA, all of which were deposited.

Even though BOA had agreed "not to foreclose if York paid $200 a month," BOA and Champion, its servicer and successor, initiated foreclosure proceedings. TAC ¶ 31. In April 2014, York received a notice of trustee sale on his home to take place on June 15, 2014. On May 24, 2014, he found another notice of sale to occur on June 4, 2014, resulting from default on the 2009 reverse mortgage. As a result of BOA's alleged breach, York's "loan was declared in default," and BOA began charging York "costs and fees incident to the default." TAC ¶ 32. In addition, York lost the benefit of his bargain with BOA: he could no longer repay his loan at a rate of $200 each month, but instead faced the possibility of having to pay the full amount immediately. Champion also charged York for fees, inspection costs, and attorney's fees incurred in connection with the foreclosure proceedings. "These costs and fees remain as charges against [York's] mortgage account and accrue interest, all to York's financial detriment." *Id.*

York filed the FAC in this lawsuit along with a request for a temporary restraining order to halt the foreclosure sale. BOA and Champion were ordered to file written responses, but they did not do so by the court-ordered deadline. Accordingly, a TRO issued on June 3, 2014, ordering the defendants to show cause why a preliminary injunction should not be entered upon expiration of the TRO. The parties agreed to continue the hearing on plaintiffs' motion for a preliminary injunction, but when Champion rescinded the notice of default and action to foreclose on York's home, the request for injunctive relief was denied as moot.

BOA filed a partially successful motion to dismiss the FAC. York's claims for elder abuse and declaratory relief were permitted to advance, and he was given an opportunity to plead the other claims with more particularity. He filed a SAC, which BOA also sought to dismiss. Again, the claims for elder abuse and declaratory relief advanced and plaintiffs were permitted one final opportunity to amend the complaint to pursue the claims dismissed. York and Miles have filed their third and final complaint. BOA moves to dismiss the complaint in its entirety again.

### III.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations are not required," but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "in allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud and mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, a plaintiff must plead "the who, what, when, where, and how that would suggest fraud." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (internal quotation marks omitted). "A plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and alteration omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in the complaint. Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). When plaintiffs have failed to state a claim upon which relief can be granted, leave to amend should be granted unless "the complaint could not be saved by any amendment." *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

## IV.  DISCUSSION[4]

### A. Claims 2 and 3:  Elder Financial Abuse and Aiding and Abetting Elder Financial Abuse

Despite the fact that BOA has twice failed to dismiss plaintiffs' claims for elder financial abuse, it renews its effort to dismiss Claim 2 of the TAC, arguing that plaintiffs have not pleaded that BOA used their property wrongfully. Elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates or retains real or personal property of an elder" or assists in doing so "for a wrongful use or with intent to defraud, or both." Cal. Wel. & Inst. Code § 15610.30(a)(1), (2). "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult" sixty-five years of age or over. *Id.* §§ 15610.27, .30(b). Thus, a plaintiff must aver (1) that the defendant took, secreted, appropriated or retained real or personal property, (2) of an elder, (3) for a wrongful use or with intent to defraud, or both. A person does not wrongfully use real or personal property if he "lend[s] money, take[s] collateral, or . . . foreclose[s] on collateral when a debt is not paid." *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2012) (internal quotation marks omitted).

---

[4] BOA seeks judicial notice of documents recorded with the San Francisco Assessor-Recorder regarding the Conkling property. York and Miles do not oppose the request. Because the records are appropriate for judicial notice, the defendants' request is granted.

As before, BOA insists plaintiffs must plead that it wrongfully used their property, while overlooking that a plaintiff may prove elder financial abuse if the defendant acquired property with intent to defraud the elder.  The TAC, as the FAC and SAC before it, avers that BOA never intended to make good on its promise to forego a foreclosure action in exchange for monthly payments of $200.  BOA also complains that the TAC does not state that BOA had communication with York—a claim that is simply not true.  Plaintiffs aver that Hardy called BOA on York's behalf and spoke with a BOA representative.  TAC ¶ 30.  Finally, BOA apparently believes that there is no information addressing how BOA knew Perkins was an elder with modest means.  The TAC states, however, that BOA financed the 2009 reverse mortgage, TAC ¶ 28, and that the mortgage application included information about York's age and income, TAC ¶ 50.  Plaintiffs have therefore adequately stated a claim for elder financial abuse.

BOA also moves to dismiss Claim 3, charging BOA with aiding and abetting elder financial abuse.  "[A] party aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act" or "(b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person."  *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010) (internal quotation marks and citation omitted); *Rosales v. Wells Fargo Bank, N.A.*, 2014 WL 4770572, *6 (N.D. Cal. Sept. 24, 2014) (applying this standard to a claim for aiding and abetting financial elder abuse).  To state a claim, plaintiffs must identify the specific conduct by which BOA "substantially assisted" in York's abuse, either while knowing the assisted party's conduct constituted a breach of duty, or by breaching a duty owed to plaintiffs.

The majority of the wrongful conduct plaintiffs aver involves RMC's employee, Perkins.[5]

---

[5] In a footnote in its reply brief, BOA argues that plaintiffs have waived any argument that BOA is responsible for Perkins's actions because they stated earlier that BOA's conduct was separate from that of Perkins.  BOA relies on California procedural law to argue that plaintiffs' alleged change of position requires plaintiffs to provide an explanation.  BOA never raised this argument in its motion to dismiss the SAC or its moving papers.  "If a party raises a new argument or presents new evidence in a reply brief, a court may consider these matters only if the adverse party is given

Plaintiffs claim that BOA "had past relationships with Perkins and RMC in connection with originating and/or purchasing reverse mortgages that were secured by the homes of protected elders." TAC ¶ 50.  In addition, they aver that BOA "knew or should have known that these loans were improperly originated and underwritten." *Id.*  This sort of conclusory assertion is ordinarily insufficient to permit a claim to advance.  *Iqbal*, 556 U.S. at 678.  York and Miles offer more, however:  they claim that BOA should have known the 2009 reverse mortgage was woefully underfunded because York's earnings were $950 each month from Social Security, and therefore could not keep up with the monthly payments under the mortgage.  *Id.*  For this reason, plaintiffs claim that BOA's underwriting was inadequate, which "enabled Perkins and RMC to take" York's property.  TAC ¶ 60.  These facts suggest that BOA knew or should have known that Perkins and RMC were engaging in wrongful conduct.  Thus, plaintiffs' claim for aiding and abetting financial elder abuse may advance.[6]

Finally, plaintiffs contend that BOA's failure to inform Champion about the oral forbearance agreement with York aided and abetted Champion to commit elder abuse.  They have not clarified how exactly Champion breached a duty owed to plaintiffs, and so they may not argue that BOA aided and abetted Champion to commit elder financial abuse.

### B. Claim 5:  Unfair Competition Law

Section 17200 of California's Unfair Competition Law ("UCL") prohibits all unlawful, unfair, or fraudulent business acts or practices.  Cal. Bus. & Prof. Code § 17200 *et seq.*  Each of these three types of business acts or practices are independently actionable; "a plaintiff may show

---

an opportunity to respond. *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014) *reconsideration denied*, No. C 10-0975 SBA, 2014 WL 3533423 (N.D. Cal. July 15, 2014), *appeal dismissed* (Sept. 26, 2014) (citing *El Pollo Loco v. Hashim*, 316 F.3d 1032, 1040–1041 (9th Cir.2003); *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996)).  Plaintiffs have not had the opportunity to respond, and BOA has raised this issue far too late in these proceedings.  Accordingly, the court will not consider BOA's argument on this point.

[6] BOA argues that plaintiffs must plead facts establishing an agency relationship between Perkins and BOA to prevail because Perkins was York's agent.  Not so.  York and Miles claim that BOA substantially assisted Perkins breach his fiduciary duty to York, not that Perkins was BOA's agent.

that the acts or practices at issue are either unlawful *or* unfair *or* deceptive." *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1169 (2002).  "A business practice is 'unlawful' if it is forbidden by law." *Id.* (internal quotation marks omitted).  "Unfair" business practices are those which "offend[] an established public policy"; are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or those which do not outweigh "the gravity of the harm to the alleged victim." *Id.* at 1169-70 (internal quotation marks omitted).  Finally, a business practice is "deceptive" if "members of the public are likely to be deceived." *Id.* at 1170.

As before, BOA argues that the statute of limitations bars plaintiffs' claims.  The statute of limitations for a UCL claim begins to run either from "the occurrence of the last element essential to the cause of action," or from the time of actual discovery or when the plaintiff should have discovered the violation.  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1191-92 (2013) (internal quotation marks omitted).  York and Miles aver that they discovered the violation approximately one year before initiating this lawsuit.  Thus, based on the facts in the TAC, the statute of limitations does not bar plaintiffs' claims.

BOA complains again that plaintiffs have not averred any wrongful conduct.  The TAC, like the SAC before it, adequately pleads a deceptive business practice—entering into an oral agreement they did not intend to honor.  Plaintiffs apparently contend that BOA's business practices violated the UCL for two additional reasons.  While they claim that BOA overcharged for underwriting for the forged loan, the TAC includes no facts to ascertain how much BOA charged or how those charges were unconnected to the services BOA provided.  Plaintiffs assert that BOA's relationship with the other defendants violated the standards of both HUD and BOA.  They do not provide any indication of which HUD or BOA standards BOA supposedly invoked.  These theories of liability therefore cannot serve as the basis for a UCL claim.

Finally, the SAC failed to state a viable UCL claim because plaintiffs had not connected BOA's conduct to any loss of property or money.  In contrast, the TAC states that, when BOA breached its promise to forego foreclosure proceedings in exchange for incremental payments of

1   $200 each month, York was charged costs and fees incident to the default.  BOA correctly points

2   out that York cannot claim the payments towards his mortgage constitute injury under the UCL

3   because he was contractually obligated to pay those sums.  Consequently, plaintiffs have pleaded

4   facts establishing standing and a potential violation of the UCL, and Claim 5 may therefore

5   advance.

### C. Claim 7: Rescission, Cancellation, and/or Restitution

"A party to a contract may rescind the contract . . . [i]f the consent of the party rescinding, or any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds . . . ." Cal. Civ. Code § 1689(b)(1).[7]  Moreover, forged documents are void, and therefore title remains in the grantor's name.  *Wutzke v. Bill Reid Painting Serv., Inc.*, 151 Cal. App. 3d 36, 43 (1984).

BOA previously challenged the viability of plaintiffs' rescission and restitution claims in the FAC and SAC, and renews its effort to dismiss the claim in the TAC.[8]  It further contends that the claim for rescission is moot because the Notice of Default has been cancelled.  While plaintiffs do not seek to rescind the Notice of Default; they wish to rescind the 2009 Reverse Mortgage, which gave BOA and its successor an interest in the Conkling property.  For the reasons previously discussed, plaintiffs have stated viable claims for rescission of the 2007 and 2009 reverse mortgages and restitution.

### D. Claim 9: Declaratory Relief

---

[7] BOA continues to overlook the fact that plaintiffs' rescission claim may advance if they prove the mortgages were obtained by fraud.

[8] BOA also persists in suggesting that plaintiffs have not pleaded a claim for rescission because the SAC does not aver that they "offer[ed] to pay the full amount of the debt for which the property was security," which is ordinarily a condition precedent for a rescission claim.  *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 112 (2011).  Tender is not required, however, when the borrower "attacks the validity of the underlying debt" because tender "would constitute an affirmation of the debt." *Id.*  Accordingly, plaintiffs' claim for rescission does not fail for lack of tender.

Order Denying BOA's Motion to Dismiss the TAC
Case No. 14-cv-02471-RS

To sustain a claim for declaratory relief, plaintiffs must plead facts establishing "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions." *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011).  As with the FAC and SAC, the factual averments and legal claims in the TAC demonstrate that there exists a live controversy over the title to York's home, the validity of the grant deed, the 2007 and 2009 mortgage agreements, and arrears payment agreement with BOA.  Thus, BOA's motion to dismiss the claim for declaratory judgment is denied.

## V.     CONCLUSION

Plaintiffs have adequately pleaded five claims for relief against BOA.  Accordingly, BOA's motion to dismiss the TAC must be denied.  BOA must answer the TAC within twenty days of this order.  A case management conference will take place at 10:00 a.m. on March 17, 2016.

**IT IS SO ORDERED**.

Dated:  February 2, 2016

RICHARD SEEBORG
United States District Judge