UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

WILLIE YORK, et al.,

          Plaintiffs,

    v.

BANK OF AMERICA, et al.,

          Defendants.

Case No.  14-cv-02471-RS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SURETY BONDING COMPANY OF AMERICA'S MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiffs Willie York ("York") and his daughter Caroline York Miles ("Miles") bring a variety of claims against multiple defendants for allegedly illegal and predatory lending practices relating to reverse mortgages on plaintiffs' home in San Francisco.  Among the defendants is Surety Bonding Company of America ("SBCA"), the surety for Agnes McNamara, a notary public who notarized an allegedly unauthorized reverse mortgage in 2009.  SBCA now moves to dismiss plaintiffs' claims against it.  Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for October 13, 2016, is vacated.  For the reasons that follow, SBCA's motion is granted in part and denied in part.

## II.  BACKGROUND[1]

Willie York is an 88-year-old San Francisco resident who has lived in the same home for 45 years.  In early 2007, Thomas Perkins, an employee of Reverse Mortgages of California ("RMC"), approached York claiming to have money for him.  York was intrigued by this

---

[1] Because defendant SBCA has filed this motion to dismiss, all facts are drawn from plaintiffs' corrected third amended complaint and taken as true for the purposes of deciding the motion.

1  possibility, and met with Perkins in the spring or summer of that year.  Perkins explained that

2  completing a reverse mortgage on York's home would allow York to receive money, forego

3  payments on the property for the rest of his life, and pass the property to his heirs.  York agreed to

4  have Perkins complete the application for a reverse mortgage on his behalf so that he could pay off

5  his home loan completely and receive money to make necessary repairs to the house.

6      On June 25, 2007, Perkins came to York's house with the requisite loan documents for

7  York to sign.  During that brief meeting, Perkins quickly flipped through the papers, pointing out

8  where York should sign.  Miles's name also appeared on the title to the home, so Perkins

9  conspired with a friend of the York family, Norma Faye Maxwell, to forge Miles's signature on

10 the deed grant in the presence of a notary public.

11     In July 2009, Perkins brokered a second reverse mortgage on York's house with Bank of

12 America ("BOA") in the amount of $78,000, using the house as collateral.  Both York and Miles

13 were unaware that Perkins had applied for this second reverse mortgage.  They neither signed the

14 loan papers nor authorized anyone to enter into the agreement on their behalf.  Nonetheless, the

15 reverse mortgage was notarized by Agnes McNamara, a notary public.  York did not learn about

16 the second reverse mortgage until several years later, when seeking legal advice.

17     In 2009, York received a letter from the City and County of San Francisco, informing him

18 that he owed property taxes on his home.  Maxwell accompanied York to City Hall to make the

19 payment, where a city clerk informed York that BOA had already paid the property taxes.  As a

20 result, York believed BOA would make all future payments on his behalf, as Perkins had

21 apparently promised.

22     Sometime in 2013, York received a letter from BOA informing him that he was in arrears

23 on his property tax payments.  York's daughter, Janice Hardy, called BOA to gather information

24 about the basis for the letter and to discuss how to address its demands.  After that conversation,

25 York understood for the first time that he was obligated to pay taxes and insurance on his home.

26 Hardy negotiated an agreement with BOA that allowed York to pay $200 per month until the

27 property tax and insurance arrears were paid in full.  Hardy requested, but never received, written

28 confirmation of the agreement.  Nonetheless, York sent BOA ten monthly payments of $200, all

United States District Court
Northern District of California

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SBCA'S MOTION TO DISMISS
CASE NO.  14-cv-02471-RS

of which were deposited.

Even though BOA had agreed not to foreclose on the house if York made the monthly payments, BOA and Champion (its servicer and successor) initiated foreclosure proceedings.  In April 2014, York received a notice of trustee sale on his home to take place on June 15, 2014.  On May 24, 2014, he found another notice of sale to occur on June 4, 2014, resulting from default on the 2009 reverse mortgage.

In response to the foreclosure proceedings and impending sale, York and Miles commenced this action, bringing claims against multiple defendants and requesting a temporary restraining order to prevent the sale of the house.  The restraining order was issued on June 3, 2014, and a subsequent preliminary injunction request was denied as moot when Champion rescinded the notice of default and action to foreclose.

Significant motions practice has ensued, with numerous claims being dismissed.  Plaintiffs have also amended their complaint three times.  In the first amended complaint, filed on September 24, 2014, plaintiffs added McNamara as a defendant for her role in notarizing the 2009 reverse mortgage.  They brought claims against her for aiding and abetting elder financial abuse, Cal. Wel. & Inst. Code § 15610.30(a), unfair business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*, rescission/cancellation and restitution, and declaratory judgment.

In their third amended complaint, plaintiffs added McNamara's surety, SBCA, as a defendant, and brought claims against it for aiding and abetting elder financial abuse, and for unfair business practices under California's UCL.  Plaintiffs seek to hold SBCA liable for McNamara's misconduct pursuant to California Government Code section 8214 ("For the official misconduct or neglect of a notary public, the notary public and the sureties on the notary public's official bond are liable in a civil action to the persons injured thereby for all the damages sustained.").  SBCA now moves to dismiss plaintiffs' claims.[2]

_____

[2] As they did with McNamara, plaintiffs also brought claims against SBCA for rescission/cancellation and restitution, and for declaratory judgment.  In its motion, SBCA argues plaintiffs cannot state a claim for rescission/cancellation and restitution because SBCA was not in a contractual relationship with any plaintiff.  Plaintiffs agree they cannot maintain a claim for

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SBCA'S MOTION TO DISMISS
CASE NO.  14-cv-02471-RS

### III.  LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  "[D]etailed factual allegations are not required," but a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint.  Dismissal is appropriate when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint in whole or in part is subject to dismissal if it lacks a cognizable legal theory or the complaint does not include sufficient facts to support a plausible claim under a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard requires "more than a sheer possibility that the defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).

### IV.  DISCUSSION

SBCA offers multiple reasons plaintiffs' claims should be dismissed.  It argues that both the UCL and elder financial abuse claims are barred by the six-year statute of repose for claims against notaries public, that the UCL claim is also barred by the UCL statute of limitations, and that plaintiffs have failed to plead their elder financial abuse claim sufficiently.

---

rescission/cancellation and restitution.  Thus, that claim is dismissed without leave to amend. SBCA also argues plaintiffs' claim for declaratory relief necessarily fails because it depends their other claims.  In response, plaintiffs simply state they do not seek declaratory relief.  Thus their claim for declaratory judgment is also dismissed without to leave to amend.

### A.  Statute of Limitations for Claims Against Notaries Public

SBCA argues plaintiffs' claims are barred by the six-year statute of repose for claims against notaries public embodied in California Code of Civil Procedure section 338(f).  Section 338(f) provides, in relevant part:

> (f)(1) An action against a notary public on his or her bond or in his or her official capacity [must be brought within three years of accrual] except that a cause of action based on malfeasance or misfeasance is not deemed to have accrued until discovery, by the aggrieved party or his or her agent, of the facts constituting the cause of action.
> . . .
> (3) Notwithstanding paragraph (1), an action against a notary public on his or her bond or in his or her official capacity shall be commenced within six years.

Cal. Code Civ. P. § 338(f).  SBCA argues plaintiffs' claims are absolutely barred by the six-year statute of repose in section 338(f)(3) because they accrued with McNamara's challenged notarization on May 19, 2009, but were not brought until November 19, 2015.

Plaintiffs' have two primary responses.[3]  First, they argue they have brought timely claims against McNamara, and that claims against SBCA can follow because SBCA "cannot be in a better position than its principal."  Pls.' Opp'n to Def.'s Mot. to Dismiss 7 (citing *Regents of Univ. of California v. Hartford Acc. & Indem. Co.*, 21 Cal. 3d 624, 634 (1978), *superseded by statute*, Assembly Bill No. 312 (1979-1980 Reg. Sess.) (amending Cal. Civ. Pro. Code § 337.15), *as recognized in Lantzy v. Centex Homes*, 31 Cal. 4th 363, 375 n.9 (2003)).  Specifically, *Hartford* holds "that under California law the running of the statute of limitations on the principal obligation does not exonerate the surety."  *Id.* at 639.  *Hartford*, like this case, concerned a statute of

---

[3] Plaintiffs also raise a third response: that the statute of repose in section 338(f)(3) does not apply insofar as their claims relate to McNamara's failure to return her notary book to the Contra Costa County Clerk within 30 days of the expiration of her license, as required by California Government Code section 8209(a).  According to plaintiffs, McNamara's license expired in September 2010, but her failure to return her notary book was not discovered until after the complaint was filed.  Whether or not the limitations in section 338(f) would apply to claims premised on such a failure is not material to this motion because plaintiffs' complaint includes no claims premised on McNamara's failure to return her notary book.  Indeed, it does not even make the factual allegation that she failed to return the notary book.

United States District Court
Northern District of California

1  limitations that referred only to the principal, and not to the surety.  *Id.* at 633.  Thus, whether or

2  not plaintiffs' claims against McNamara are timely, their claims against SBCA are not time-barred

3  by section 338(f)(3).  In response to *Hartford*, California amended the statute of limitations at

4  issue there (for claims for latent construction defects) to include claims against sureties.  *Lantzy*,

5  31 Cal. 4th at 375 n.9.  Absent similar amendment to section 338(f)(3), it will not time-bar claims

6  against sureties.

7      Second, plaintiffs argue their claims against SBCA relate back to timely claims against

8  McNamara through their use of John Doe defendants in the first amended complaint.  Because

9  plaintiffs succeed on their first argument, and because neither party thoroughly briefed this

10  relation-back issue, it is neither necessary nor appropriate to decide.

### B.  Statute of Limitations for UCL Claims

12      SBCA also argues plaintiffs' unfair business practices claim is barred by the UCL's four-

13  year statute of limitations.  *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause

14  of action pursuant to this chapter shall be commenced within four years after the cause of action

15  accrued.").  According to SBCA, plaintiffs' UCL claim should have been brought by May 19,

16  2013, four years after McNamara's notarization.

17      Plaintiffs argue a UCL claim does not accrue until the date of discovery, *see Aryeh v.*

18  *Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (concluding that "the UCL is governed by common

19  law accrual rules [including the discovery rule] to the same extent as any other statute), and that

20  they did not discover the 2009 reverse mortgage until York met with the staff at Bay View

21  Hunters Point Community Legal in April 2014, *see id.* at 1192 ("[T]he discovery rule, where

22  applicable, postpones accrual of a cause of action until the plaintiff discovers, or has reason to

23  discover, the cause of action.") (citations and internal quotation marks omitted).  SBCA offers no

24  reply, appearing to concede the discovery rule preserves plaintiffs' UCL claim.  Thus, plaintiffs'

25  UCL claim is not time-barred.

### C.  Pleading Adequacy

26      Finally, SBCA argues plaintiffs have failed to plead adequately a claim for aiding and

27  abetting elder financial abuse by failing to allege specific facts showing SBCA substantially

28

Order Granting in Part and Denying in Part Defendant SBCA's Motion to Dismiss
Case No.  14-cv-02471-RS

6

assisted in abusing York.  Elder financial abuse occurs when a person or entity "[t]akes, secretes, appropriates or retains real or personal property of an elder" or assists in doing so "for a wrongful use or with intent to defraud, or both." Cal. Wel. & Inst. Code § 15610.30(a)(1), (2).  "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult" sixty-five years of age or over.  *Id.* §§ 15610.27, .30(b).  Thus, a plaintiff must aver (1) that the defendant took, secreted, appropriated or retained real or personal property, (2) of an elder, (3) for a wrongful use or with intent to defraud, or both. A person does not wrongfully use real or personal property if he "lend[s] money, take[s] collateral, or . . . foreclose[s] on collateral when a debt is not paid." *Stebley v. Litton Loan Servicing, LLP*, 202 Cal. App. 4th 522, 528 (2012) (internal quotation marks omitted).  Plaintiffs have already stated viable claims for elder financial abuse in connection with the 2009 reverse mortgage.  *See* Order of October 20, 2015 at 11.

"In California, a party aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010) (citation and internal quotation marks omitted); *see Rosales v. Wells Fargo Bank, N.A.*, 2014 WL 4770572, *6 (N.D. Cal. Sept. 24, 2014) (applying this standard to a claim for aiding and abetting financial elder abuse).  To the extent plaintiffs have alleged that York never requested, agreed to, or authorized the reverse mortgage, and that McNamara "allow[ed] . . . the 2009 Reverse Mortgage to be completed due to [her] fixing of improper and unauthorized notary acknowledgments on documents," they have sufficiently pled an aiding and abetting claim against McNamara.  Because SBCA is "liable in a civil action to the persons injured" by "the official misconduct or neglect of a notary public," plaintiffs have sufficiently pled an aiding and abetting elder financial abuse claim against SBCA.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### V.  CONCLUSION

For the foregoing reasons, SBCA's motion is granted with respect to plaintiffs' declaratory judgment and rescission/cancellation and restitution claims, and denied with respect to plaintiffs' unfair business practices and aiding and abetting elder financial abuse claims.

**IT IS SO ORDERED**.


Dated: October 5, 2016

_____
RICHARD SEEBORG
United States District Judge